CLERK'S OFFICE
A TRUE COPY
Nov 06, 2023
s/ D. Olszewski
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) |
| information associated with tsoa@mail.com, williebullard@gmail.com, 1simplesolutionllc@gmail.com, hiddengemrealtyatl@gmail.com, and rayrilla232023@icloud.com that is stored at premises controlled by Apple | ) ) ) ) |

Case No.   23   MJ   178

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC §§ 371, 511,1343, 1956, 1957, 2312, 2313 | Conspiracy, Altering VINs, Wire Fraud, Money Laundering, Interstate Transportation of Stolen Vehicles, Sale/Receipt of Stolen Vehicles |

The application is based on these facts:

See Affidavit

- ☐ Continued on the attached sheet.
- ☐ Delayed notice of \_\_\_\_\_ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

FBI SA Shane Hoffmann

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____telephone_____ *(specify reliable electronic means).*

Date: \_\_\_11/6/2023\_\_\_

City and state: \_\_\_Milwaukee, Wisconsin\_\_\_

*Judge's signature*

U.S. Magistrate Judge William E. Duffin

*Printed name and title*

# AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Shane Hoffmann, being first duly sworn, hereby depose and state a follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant for information associated with certain accounts that are stored at premises owned, maintained, controlled, or operated by Apple Inc. ("Apple"), an electronic communications service and/or remote computing service provider headquartered at One Apple Park Way, Cupertino, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Apple to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

2.      I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been since September 2015.  I am currently assigned to the Milwaukee Division – Madison Resident Agency. Since becoming a Special Agent, I have received specialized training in conducting criminal investigations, and my responsibilities include conducting investigations of alleged criminal violations of federal statutes and laws.  I have participated in the execution of search warrants in various judicial districts, including the recovery of records, contraband, and other types of property. I have received training in computer technology, and I have on numerous occasions reviewed the content of targets' phones and computers, email accounts, and social media accounts for evidence of criminal activity.

3. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## TARGET ACCOUNTS

4. This warrant seeks information from the following Apple iCloud accounts, associated with WILLIE BULLARD and RAYMOND COOPER, for the corresponding timeframes:

- tsoa@mail.com          **05/8/19 through the present**
- williebullard@gmail.com    **06/17/22 through the present**
- 1simplesolutionllc@gmail.com    **07/1/19 through the present**
- hiddengemrealtyatl@gmail.com    **06/4/22 through the present**
- rayrilla232023@icloud.com    **11/1/2019 through the present**

5. Preservation of content requests have previously been submitted for the following Apple iCloud accounts: williebullard@gmail.com, reference numbers 202300246332 and 202300323711; hiddengemrealtyatl@gmail.com and tsoa@mail.com, reference numbers 202300278808 and 202300356656.

## PROBABLE CAUSE

## BACKGROUND

6. The United States, including the FBI, is conducting a criminal investigation of DIAUNTE D. SHIELDS (DOB: 02/18/1995), WILLIE BULLARD (DOB: 07/02/1983), and others known and unknown, regarding possible violations of, among other crimes, 18 U.S.C. § 371 (conspiracy), 18 U.S.C. § 511 (altering or removing vehicle identification numbers), 18 U.S.C. § 1343 (wire fraud), 18 U.S.C. §§ 1956 and 1957 (money laundering and unlawful monetary transactions), and 18 U.S.C. §§ 2312 and 2313 (transportation of stolen vehicles and sale or receipt of stolen vehicles).

2

7.     This investigation involves the organized theft and resale of high-end motor vehicles. I know from my training and experience that there is a large amount of money associated with the theft and sale of high-end motor vehicles. I also know that high-end vehicles over the retail price of $50,000 have means of identifying the vehicle other than vehicle identification number (VIN) plates and stickers, such as: hidden VIN stamps, identifying parts numbers, etching on glass windows, and electronic data stored in the vehicle's Electronic Control Unit (ECU). Based on this investigation, I believe that the auto theft ring with which SHIELDS and BULLARD are involved is replacing the stolen vehicles VIN plates and VIN stickers but not changing the hidden identifying features.

8.     The investigation has revealed that throughout the latter part of 2022 and into 2023 SHIELDS and associates were operating a criminal enterprise in the Milwaukee, Wisconsin, area. During this period, investigators linked the group to a number of stolen vehicles that had altered VINs and fraudulent titles, as well as other criminal activities including money laundering and drug distribution. Prior to operating in Milwaukee, SHIELDS was living with his girlfriend, CASHA GRIFFIN, in the Kenosha, Wisconsin, area until April 2022 when law enforcement executed search warrants on four properties associated with SHIELDS. Lease records indicate that GRIFFIN started the lease in Kenosha on August 19, 2021. Lease records also show that from April 12, 2018, through April 30, 2020, SHIELDS held a lease at 8920 83rd Street, Apartment 32, Pleasant Prairie, Wisconsin.

9.     As the investigation has evolved, investigators have uncovered an expansive nationwide network of individuals who have been working with SHIELDS since at least 2019 to steal high end vehicles, alter their VINs, produce fraudulent titles, and sell the vehicles throughout the country.  Investigators have identified many of the individuals involved due to content obtained

3

from iCloud accounts linked to SHIELDS and his associates. These iCloud accounts have also led to the identification of a number of email accounts that have been used to further the activities of the enterprise. In addition to the vehicle theft and processing operation, investigators believe that members of the enterprise have also participated in drug trafficking, money laundering, financial fraud, and weapon violations. Participants have been identified in Wisconsin, including the Madison and Milwaukee areas, as well as California, Illinois, Georgia, and Delaware.

10. The following is a non-exhaustive list of personnel who have been identified and involved in SHIELDS's enterprise:

WILLIE BULLARD, date of birth July 2, 1983, Georgia

CASHA GRIFFIN, date of birth July 12, 1993, Illinois, SHIELDS's girlfriend

NAKIYA WRIGHT, date of birth January 9, 1994, Wisconsin, SHIELDS's girlfriend

LASHAWN DAVIS, date of birth May 7, 2000, Wisconsin

GREGORY WILDER, date of birth August 2, 1991, Wisconsin

BRANDON MULLINS, date of birth 10/4/1985, Georgia

DIAUNTE J. SHIELDS, date of birth May 2, 1980, Wisconsin, SHIELDS's father

JORDAN HUFF, date of birth September 6, 1996, Illinois

TASHERA NEWSOME, date of birth July 5, 1957, Illinois, SHIELDS's grandmother

MELIEK MCCLARN, date of birth April 4, 1993, Wisconsin

ANDRES OCAMPO-MARTINEZ, date of birth May 13, 1998, Wisconsin

ESTEBAN CARDENAS, date of birth December 26, 1987, Wisconsin

RAYMOND COOPER, date of birth September 8, 1990, Georgia

AUBREY MITCHELL, date of birth November 13, 1994, Georgia

DENORRIS BUSH, date of birth October 16, 1983, Georgia

4

KENNETH KILSON, date of birth July 11, 1982, Delware / Pennsylvania

RAIDON DUONG, date of birth March 16, 1979, California

GEOFFREY HARVEY, date of birth July 22, 1990, Georgia

11.     Search warrants have previously been obtained for accounts for some of the individuals referenced above. Based on a review of those accounts, additional iCloud and email accounts have been identified. The facts presented within this affidavit provide support to obtain content, including but not limited to emails, messages, photographs, videos, search history, location data, notes, and contacts, from the Target Accounts, described in paragraph four above.

12.     Evidence obtained from these accounts will assist law enforcement in identifying procedures, locations, and structure of the organization, as well as identifying additional individuals involved in the nationwide criminal enterprise.

### *Additional Background: Records Obtained from Car Haulers*

13.     The investigation has revealed that the enterprise moves vehicles throughout country by utilizing "runners" (paid associates) as well as commercial transportation companies. The enterprise moves vehicles from coast to coast throughout the United States.

14.     A review of records obtained from devon5578@icloud.com and champrob221@icloud.com, iCloud accounts that investigators have linked to SHIELDS, revealed numerous messages with a contact listed as "Laura Car Shipping" and "Laura (Shipping)."  The messages spanned from July 2020 through December 2020.

15.     In April 2023, investigators contacted L.R. who owns Action Auto Broker, and was the individual represented by "Laura Car Shipping" that SHIELDS was in contact with.  L.R. explained that SHIELDS, known to L.R. as "Devon," would contact L.R. to have L.R. arrange for vehicles to be shipped throughout the country.  L.R. provided shipping records in the form of

5

dispatch sheets for over thirty vehicles that L.R. arranged to be shipped for SHIELDS and associates. The records spanned the timeframe of July 2020 through January 2021.

16. The dispatch sheets include order information such as the carrier, vehicle information, and pick-up and delivery information including dates, addresses, names, and phone numbers. The majority of the vehicles were transported between Illinois and Georgia; however, vehicles were also shipped from and/or delivered to California, Delaware, and Virginia.

17. For example, records obtained from Action Auto Broker and T. R. Transport Services showed that on November 5, 2020, a 2017 Maserati Gibli with VIN ZAM57XSAXH1492845 was picked up at 3172 Rosewell Road, Atlanta, Georgia (3172 Roswell Road is the listed business address for DAW Logistics, described further below), to be delivered to 3901 Lancaster Pike, Wilmington, Delaware. The listed pick-up contact was "WILLE BULLARD" at phone number 404-775-6573, and the drop off contact was "Jamie" at phone number 302-287-0017. The investigation has determined that phone number 302-287-0017 was associated with KENNETH KILSON and was associated with "K Philly" in the contacts for devon5578@icloud.com.

18. On or around November 5, 2020, champrob221@icloud.com records show that BULLARD texted SHIELDS the following:

MASERATI

15,000 SOLD
10,611.50 DEE GOT IN CAR OWED TO HIM
500 WILL GLASS GUY

15,000 SOLD
11,111.50 INVESTED
3,888.50 / 2 = 1,944.25

12,555.75 OWED TO DEE

6

2,444.25 OWED TO WILL

19.    Based on the timing of this text, I believe BULLARD's cost breakdown in the message is referring to the Maserati that was shipped from Georgia to Delaware.

20.    On or around November 6, 2020, KILSON texted SHIELDS, "What time the Masai coming?"  The conversation continued regarding the delivery.  Transport records indicate that on November 7, 2020, the Maserati was delivered to Delaware.  Pictures taken by the transportation company upon delivery captured a black male looking at the Maserati. A comparison of the black male to known booking and driver license photographs of KILSON show a very strong resemblance.

21.    On or about November 7, 2020, KILSON texted SHIELDS, "Check engine light on in the Masai."  The conversation continued regarding the check engine light.  SHIELDS also told KILSON, "title to the mazi is in the trunk," and KILSON confirmed receipt.

22.    In July 2021, a 2015 Maserati Ghibli with public VIN ZAM57XSAXH1492845 was recovered by the Chamblee, Georgia, Police Department. The genuine VIN was found to be ZAM57XSA2F1140338, and the vehicle was reported stolen out of Union City, Georgia, in October 2018.

23.    A review of bocruz0218@icloud.com, an iCloud account utilized by SHIELDS from 2022 into 2023, identified a contact "Patrick (Shipping)" associated with phone number 323-899-8126. An open source search of that phone number linked it to Brave Brokerage.  A review of Cash App records showed that between September 2019 and July 2022, 31 transactions totaling over $5,000 were made to Brave Brokerage by Cash App accounts linked to SHIELDS, BULLARD, GRIFFIN, and WRIGHT.

7

24.     Investigators contacted P.D., owner of Brave Brokerage, who stated that he is an auto broker who arranges vehicle transport for customers. P.D. provided shipping dispatch sheets for approximately 30 shipments involving over 40 vehicles associated with the targets of this investigation, spanning March 2021 through December 2022, many of which corresponded with the Cash App payments previously described.

25.     A review of the dispatch sheets revealed phone numbers and addresses connected to subjects of the investigation including BULLARD, SHIELDS, and GEOFFREY HARVEY. Investigators also contacted a number of actual transport companies (i.e., the entities doing the actual car hauling) that provided photographs and/or bills of lading for the shipments. In some instances, the haulers were able to capture VINs or license plates which investigators have determined to be likely fraudulent and/or associated with a stolen vehicle.

26.     For example, White Flag Transport LLC confirmed that on May 25, 2021, a 2020 Dodge Charger was shipped from 3901 Lancaster Pike, Wilmington, Delaware, to 2751 N 58th Street, Milwaukee, Wisconsin.  The phone number associated with the shipment was 404-666-2040, and the delivery signature typed as "Devon Jackson." In SHIELDS's devon5578@icloud.com account, this phone number was associated with contact "Will." Transporter pictures show a gray Dodge Charger SRT with a door sticker displaying VIN 2C3CDXL90LH470926.  Fiat Chrysler confirmed that the listed VIN is fraudulent and was never manufactured.  The listed Milwaukee address was associated with Darryl Simmons.  SHIELDS's bocruz0218@icloud.com account has a contact listed as "Butta" associated with phone number 678-662-1355, and phone records show the subscriber to 678-662-1355 was Darryl Simmons.

27.     As another example, Royalty Group INC confirmed that on October 6, 2021, a 2020 Chevrolet Suburban was shipped from Atlanta, Georgia, to Mokena, Illinois.  The phone number

8

associated with the shipment was 404-666-2040 (BULLARD's phone). Transporter pictures of the vehicle show Pennsylvania plate KLJ6639 associated with a gray 2020 Chevrolet Suburban. The vehicle was reported stolen to the Atlanta Police Department on December 13, 2021. Per police report number 213478057, the vehicle was rented from Hertz and not returned. At least 19 of the shipping records provided by Brave Brokerage had phone number 404-666-2040 (BULLARD's phone) as the listed contact number.

### *Additional Background: Texas Temporary Operating Permits*

28.     Investigators believe part of the organization's method of operation has included using temporary operating tags from Texas during the process of cleaning up stolen vehicles for resale.

29.     Texas Department of Motor Vehicles records show that between March 2020 and August 2022, 66 Texas Temporary Operating Permits were purchased by applicants using the email addresses **williebullard@gmail.com**, **tsoa@mail.com**, champrob221@icloud.com, thekid528000@icloud.com, and devon5578@icloud.com. The last three email addresses are associated with SHIELDS. Some of the business names used on the applications included DAW Logistics LLC, Precision Auto, Premier Leasing LLC, and Hidden Gem Trucking LLC (businesses connected to BULLARD, described further below). As exemplified below, VINs associated with the applications have been shown to be fraudulent.

30.     A review of champrob221@icloud.com revealed an email dated August 19, 2020, from **williebullard@gmail.com** to champrob221@icloud.com. The email was a forwarded email that was originally sent to **williebullard@gmail.com** from noreply@txdmv.gov. The email contained an attachment for Texas temporary registration tag 167152C for a 2020 Dodge with VIN 1C4SDJGJ3LC850371. Fiat Chrysler Automobiles (FCA) advised that 1C4SDJGJ3LC850371 is

a fraudulent VIN. On January 26, 2023, the fraudulent VIN was found on a Dodge Durango by the Pennsylvania State Police. The genuine VIN on the Dodge Durango was determined to be 1C4SDJGJ1LC283836, and it was associated with a vehicle that was stolen from Midway Airport in Chicago around August 21, 2020, which is around the same timeframe that BULLARD forwarded the Texas temporary plate to SHIELDS.

31.    A review of thekid528000@icloud.com shows an email dated April 1, 2021, to thekid528000@icloud.com from noreply@txdmv.gov for the purchase of two Texas 72-hour temporary vehicle operating permits registered to "Jeff Daniels" at address 2223 S. Avers, Chicago, Illinois.  One of the permits was assigned number 709281C, expiration date of May 3, 2021, for a 2019 black Jeep with VIN 1C4RJFN95KC963864.  Stellantis confirmed that the VIN is fraudulent.

32.    Another email dated April 1, 2021, to thekid528000@icloud.com from noreply@txdmv.gov was for the purchase of a Texas 72-hour temporary vehicle operating permit assigned permit number 709334C, also registered to "Jeff Daniels" at address 2223 S. Avers, Chicago, Illinois, expiration date of May 6, 2021, for a 2018 black Jeep with VIN 1C4RJFN94JC667764.  NICB Agent Todd Heinz advised that VIN 1C4RJFN94JC667764 had no shipping information or Carfax records associates with it, which is an indication that the VIN is fraudulent.

33.    A review of thekid528000@icloud.com revealed two emails dated April 1, 2021, from  thekid528000@icloud.com  to  **williebullard@gmail.com**.  Each email contained an attachment for the Texas 72-hour temporary vehicle operating permits 709281C and 709334C as described previously.

10

34.     Atlanta Police Report for case number 220260337 indicated that a white 2019 Jeep Grand Cherokee with fraudulent VIN 1C4RJFN95KC963864 was reported stolen on January 26, 2022, in Atlanta, Georgia.  On or about January 29, 2022, the white 2019 Jeep Grand Cherokee with fraudulent VIN 1C4RJFN95KC963864 was recovered in Atlanta and it was determined that the genuine VIN was 1C4RJFN93JC239363. At the time of recovery, the vehicle had Texas temporary plate 36998R8.

## WILLIE BULLARD

35.     The investigation has revealed that SHIELDS has worked closely with WILLIE BULLARD, who lives in Georgia. Text messages, shipping records, financial records, and business records, among other things, show SHIELDS and BULLARD working together as partners to steal high end vehicles, alter their VINs, procure fraudulent titles for the vehicles, and sell the vehicles throughout the country. The activities of BULLARD and SHIELDS resulted in an influx of cash as seen in financial records and discussed in text conversations.

36.     In recent years, BULLARD registered a number of businesses in Georgia in what appears to be an attempt to provide a legitimate front for his illegal activities and launder money. In doing so, BULLARD created financial accounts and email accounts that corresponded with his businesses.

37.     As described further below, Georgia Secretary of State records show that BULLARD was involved in the organization of a number of businesses including DAW Logistics, Simple Solutions and Associates LLC, The Toy Store of Atlanta LLC, Premier 1 Auto Sales LLC, The Toy Store of ATL LLC, Hidden Gem Realty LLC, Hidden Gems Community Corp LLC, Hidden Gem Restoration LLC, and Hidden Gem Trucking LLC.

11

38.     BULLARD used a variety of email accounts, some of which he also used to create iCloud accounts, to further his illegal activities. Email accounts that have been linked to BULLARD include williebullard@gmail.com, dawlogisticsllc@gmail.com, 1simplesolutionllc@gmail.com, tsoa@mail.com, hiddengemrealtyatl@gmail.com, and hgcommunitycorp@gmail.com. Of those, Apple has confirmed that iCloud accounts exist for **williebullard@gmail.com**, **1simplesolutionllc@gmail.com**, **tsoa@mail.com**, and **hiddengemrealtyatl@gmail.com.**

39.     I believe that content in the form of emails, messages, photographs, videos, location data, search history, and notes, among other items obtained from BULLARD's referenced accounts will provide further clarification as to the scope of his illegal activities and aid in identifying procedures and organizational structure of, and additional individuals involved in, the nationwide criminal enterprise.

### *Relationship Between WILLIE BULLARD and DIAUNTE SHIELDS*

40.     A review of iCloud accounts and phone tolls show that BULLARD and SHIELDS have been in contact from at least July 2019. A review of bocruz0218@icloud.com, an iCloud account utilized by SHIELDS from 2022 into 2023, revealed phone numbers 404-499-3183 and 678-900-9887 linked to a contact called "Will." Phone number 404-499-3183 was activated on March 19, 2022, in the name "Victor Cruz," and phone number 678-900-9887 was activated on November 20, 2021, and is in the name HGT Trucking – WILLIE BULLARD.

41.     A review of messages from devon5578@icloud.com and champrob221@icloud.com, additional iCloud accounts linked to SHIELDS, show numerous messages between SHIELDS and phone number 404-769-2025, listed in contacts as "WILL" and "WILL TRAP," phone number 678-900-9887 listed as "Will 2," as well as phone number 404-

775-6573 listed in contacts as "WILL." Investigators have attributed these phone numbers to BULLARD. The messages span the timeframe of July 2019 through September 2021.

42.     There are numerous messages between SHIELDS and BULLARD that demonstrate their ongoing relationship pertaining to the theft, processing, sale, and transport of vehicles, as well as numerous discussions involving business and finances.

43.     On or around August 22, 2019, SHIELDS texted BULLARD, "8929 83rd st apt 32 pleasant Prairie wi 53158 Diaunte Shields." The investigation has shown that SHIELDS leased an apartment at this address.

44.     On or around November 8, 2019, BULLARD texted SHIELDS, **Williebullard@gmail.com** 404-775-6573.

a. Google has confirmed that the Google account **williebullard@gmail.com**, was created on April 17, 2011, and subscribed to WILLE BULLARD. The associated recovery email was **1simplesolutionllc@gmail.com**.

b. Apple has confirmed that the iCloud account **williebullard@gmail.com**, was created on June 17, 2022, using the name WILLE BULLARD, address of 5311 Vinings Springs Pointe, Mableton, GA. The associated phone number included 678-900-9887.

45.     On or around November 15, 2019, SHIELDS texted BULLARD the following:

> T for track hawk
> Clean up hell cat
> Clean up my truck
> T for the truck pick up
> Can you turn the title on the Audi for me down bottom?

BULLARD responded, "Audi yes And ok." Based on my training, experience, and knowledge of the case, I believe the above exchange represented a "to do" list in which SHIELDS was communicating with BULLARD regarding what needed to be done on certain vehicles in the

13

course of their theft and resale business. I believe "T" stood for "title," meaning the vehicle needed a new title.

46. On or around January 2, 2020, BULLARD and SHIELDS discussed making titles for different vehicles as demonstrated in the following conversation:

> BULLARD: Infiniti and which range
> SHIELDS: The black autobiography, and the Infiniti needs one for 2ma. How many t's you have?
> BULLARD: 4
> SHIELDS: Print 1more for the Durango for when you come but don't do the truck yet
> BULLARD: U sure?
> SHIELDS: Did he say how long before you can get more!
> BULLARD: When I get back
> BULLARD: Those are 2017 Range Rover 2019 Range Rover 2017 S65 v12
> BULLARD: Correct
> SHIELDS: Yes
> SHIELDS: And hawk
> BULLARD: Ima just do all 4 one will be without a title until I get back which one should that be
> SHIELDS: ok

Based on my training, experience, and knowledge of the case, I believe SHIELDS and BULLARD are discussing in this exchange producing fraudulent titles for a number of high end vehicles.

47. On or around February 5, 2020, SHIELDS texted BULLARD the following:

Tom Tahoe
Sold 6500
-2000 tom
-700 t will
-250 window will
3550 left between us
1775 each

Will 2725
Me 1775

Blue Tahoe 7500
-2000 me
-500 Twan

14

-700 t will

4300 between us
2150 each

Will 2850
Me 4650

Based on my training, experience, and knowledge of the case, I believe that the above message is a ledger in which SHIELDS tracked the cash flow involved in the processing and sale of two Tahoe vehicles. Associated costs included acquiring titles (referenced by "t") and replacing windows which were broken during theft and VIN replacement. Additional costs in a vehicle resale transaction could include the purchase of the vehicle (in the event members of the organization did not steal it themselves), transportation fees, and payments made to "unhook" (i.e., disable GPS tracking for) the car.

48.     On or around November 5, 2020, BULLARD texted SHIELDS the following:

CHALLENGER DEAL

20,000 SELL
-7500 DEE BOUGHT CAR
-650 TITLE WILL BOUGHT
-650 TITLE WILL BOUGHT SECOND
1200 TRANSPORT DEE
1200 TRANSPORT WILL
400 GLASS

9100 DEE INVESTMENT
2500 WILL INVESTMENT

20,000 SELL
11,600 IN CAR

8,400\2 = 4,200. PROFIT

13,300 DEE TOTAL OWED
6,700 WILL TOTAL OWED
_____

15

TRACKHAWK DEAL

20,000 SELL
-1200 TRANSPORT LA DEE
-1200 TRANSPORT GA WILL
-650 SHIRT 1 WILL
-650 SHIRT 2 WILL
8,000 DEE PURCHASED TRUCK
250 GLASS WILL
500 WILL GATOR
500 GLASS REDO WITH JEFF PEOPLE

9200 DEE INVESTMENT
3,750 WILL INVESTMENT

20,000 SELL
12,950 IN CAR

7,050 / 2 =3525

12,725 DEE TOTAL OWED
7,275 WILL TOTAL OWED
_____

TRACKHAWK DEAL WITH REAL WORK

22,500 SELL

5873 PAPERWORK DEE PAID
1000 TRANSPORT WILL
500 CRUSH WILL
1200 TRANSPORT WILL TO ATL
500 GLASS GUY

5873 DEE INVESTMENT
3200 WILL INVESTMENT

22,500 SELL
9,073 IN CAR

13,427 / 2 = 6,713.50

12,586.50 DEE TOTAL OWED
9,913.50 WILL TOTAL OWED

16

TOTAL FROM ALL CARS

38,611.50 OWED TO DEE
23,888.50 OWED TO WILL

38,611.50
-28,000 PAID 11/5

10,611.50 IS IN MASERATI OWED TO DEE

Based on my training, experience, and knowledge of the case, I believe that the above message detailed a ledger for three vehicles that SHIELDS ("DEE") and BULLARD bought, processed, and sold. The prices noted for both the purchase and the sale of the vehicles are well below fair market value.

*Example of SHIELDS's and BULLARD's Illegal Business: Theft and Resale of Three Jeeps*

49.    Huntley, Illinois, Police Department report HU-20-009713, indicates that between November 13, 2020, and November 18, 2020, a black 2017 Jeep Grand Cherokee with VIN 1C4RJFDJXHC877227 was stolen from the lot of Huntley Ford located at 13900 Auto Mall Drive, Huntley, Illinois. Huntley, Illinois, Police Department report HU-20-009912, indicates that on or around November 17, 2020, a blue 2017 Jeep Grand Cherokee SRT with VIN 1C4RJFDJ5HC855927 was stolen from the lot of Huntley Ford; however, it was not noticed missing until about a week later.  Further, on or around November 24, 2020, a white 2018 Jeep Grand Cherokee SRT with VIN 1C4RJFDJ4JC323333 was stolen from the lot of Huntley Ford located at 13900 Auto Mall Drive, Huntley, Illinois.

50.    On December 2, 2020, a Wheaton, Illinois, police officer conducted a traffic stop on a black Jeep Grand Cherokee.  When the officer pulled over the black Jeep Grand Cherokee, a white and a blue Jeep Grand Cherokee also pulled over.  The black Jeep was displaying Texas

17

temporary operating permit 430913C and public VIN 1C4RJFDJXLC836962, the blue Jeep was displaying Texas temporary operating permit 430917C and public VIN 1C4RJFDJ4LC492142, and the white Jeep was displaying Texas temporary operating permit 430889C and public VIN 1C4RJFDJ3KC525923.

51.     The drivers of the Jeeps presented law enforcement with fraudulent Georgia titles and the driver of the white Jeep said he purchased and picked up the vehicles in Madison, Wisconsin. Investigators determined that the VINs on all three vehicles had been altered and that the vehicles were actually the white 2018 Jeep Grand Cherokee with genuine VIN 1C4RJFDJ4JC323333, the blue 2017 Jeep Grand Cherokee with genuine VIN 1C4RJFDJ5HC855927, and the black 2017 Jeep Grand Cherokee with genuine VIN 1C4RJFDJXHC877227 that were stolen from Huntley Ford in November 2020.

52.     Texas Department of Motor Vehicles records indicate that the temporary Texas operating permits from the three Jeeps were all purchased by an individual using phone number 404-769-2025 and email address **tsoa@mail.com**. The investigation has associated the phone number and email address to BULLARD.

53.     In addition to the three temporary Texas operating permits from the recovered Jeeps, BULLARD's phone number 404-769-2025 was used for the purchase of 23 additional temporary Texas operating permits in 2020 and 2021.  Business names used to purchase the permits included Premier Leasing LLC, Precision Auto, 5PS Auto Group, and DAW Logistics LLC. Email addresses used on the applications included **williebullard@gmail.com** and **tsoa@mail.com**.  Of the 12 temporary tag VINs analyzed to date, all have been proven to be fraudulent or suspected to be fraudulent, including fraudulent VIN 1FTYR1ZM0JKB00352 which was displayed on a Ford van seized during the execution of search warrants targeting SHIELDS

18

in April 2022 in Kenosha, Wisconsin.

54.     The investigation has also uncovered evidence linking the targets of this investigation to the theft of the Jeeps from Huntley, Illinois.

55.     On or around November 17, 2020 (in the timeframe when the blue and black Jeeps were stolen from Huntley Ford), SHIELDS contacted L.R. to schedule a carrier to haul three vehicles from Chicago, IL, to Atlanta, GA.  Per the bill of lading obtained from S.Y., the contracted carrier, on November 18, 2020, a 2020 Jeep Wrangler with VIN ending in "836962," a 2020 Jeep with VIN ending in "492122," and a 2020 Maserati Ghibli were picked up from "Devon" in Chicago, IL, to be delivered to WILLIE BULLARD at 3172 Rosewell Road, Atlanta, GA.  It is noted that the blue 2017 Jeep Grand Cherokee with genuine VIN 1C4RJFDJ5HC855927 had a fraudulent VIN of 1C4RJFDJ4LC492142, and the black 2017 Jeep Grand Cherokee with genuine VIN 1C4RJFDJXHC877227 had a fraudulent VIN 1C4RJFDJXLC836962.  The "492122" was one digit off from "492142" and was possibly a transcription error, while the "836962" was an exact match.  The listed phone number for WILLIE BULLARD was 404-775-6573.  The bill of lading also contained the phone number 404-769-2025.  The investigation has associated both phone numbers with WILLIE BULLARD.

56.     On or around November 23, 2020, messages from devon5578@iCloud.com revealed SHIELDS having a discussion with MCCLARN, phone number 608-421-9150, in which SHIELDS told MCCLARN that he had two 2017 Jeeps, one with 4,500 miles and the other with 5,000 miles, and that SHIELDS was looking for $14,000 each. The following conversation ensues:

    MCCLARN: Ok I just told a couple ppl
    SHIELDS: Ok
    MCCLARN: Still the G titles?
    SHIELDS: I can get other ones done but they don't look as good, and I don't think they on to them reading that content honestly.

MCCLARN: So you think the G's still gon get thru? I got 10 fa 1 right na. I dun grab 5 whips soo far.  I know I'm good fa it.
SHIELDS: To low. We shipped the cars to different states all type of shit if I didn't have that much in it I would but I have to much in I go
MCCLARN: Wym u ship em?
SHIELDS: They in Atlanta
MCCLARN: Aw
SHIELDS: I have to ship em back but that won't be no issue
MCCLARN: Damn.  They both black?
SHIELDS: One is dark blue with tan guts
MCCLARN: I think I got sumbody who want both! Waitn ona call bac now
SHIELDS: Yup.  Only thing my mans put 2020 instead 17 so
MCCLARN:  Wym on a title? How much fa the deposit?
SHIELDS: 2500 each
MCCLARN: An how long will it take fa them to be ready?? An can yal bring em to Madison?

57.     Based on my training, experience, and knowledge of the case, I believe that the two jeeps being discussed in the above conversation are the blue 2017 Jeep Grand Cherokee with genuine VIN 1C4RJFDJ5HC855927 and the black 2017 Jeep Grand Cherokee with genuine VIN 1C4RJFDJXHC877227 that were stolen from Huntley Ford on around November 17, 2020.  I believe MCCLARN was asking if the two Jeeps came with Georgia titles when he asked about the "G titles," and MCCLARN was inquiring if the Georgia titles were still working.  MCCLARN informed SHIELDS that he has someone who offered $10,000 for one of the Jeeps, but SHIELDS told MCCLARN that $10,000 is too low as there is too much money in them because the Jeeps have already been shipped to Atlanta.

58.     Then on November 24, 2020, the day the white 2018 Jeep Grand Cherokee with genuine VIN 1C4RJFDJ4JC323333 was stolen from Huntley Ford, Verizon records show that BULLARD's cell phone, utilizing phone number 404-769-2025, was in the vicinity of Huntley Ford.  On November 25, 2020, BULLARD's cell phone was in the vicinity of the parking garage at 365 N. Halsted, Chicago, Illinois, where officers observed the white 2018 Jeep Grand Cherokee

20

with genuine VIN 1C4RJFDJ4JC323333.

59. On or around November 25, 2020, messages from devon5578@iCloud.com revealed SHIELDS having a discussion with MCCLARN, phone number 608-421-9150, in which they discuss the selling price of three Jeep SRTs. SHIELDS told MCCLARN that SHIELDS would take $42,000 for all three Jeeps. MCCLARN then texted SHIELDS, "All 3 for 48k." I believe that MCCLARN mistakenly sent that text to SHIELDS, intending instead to send the "All 3 for 48k" message to a prospective buyer, indicating MCCLARN's markup of $6,000.

60. On or around November 25, 2020, messages from devon5578@iCloud.com revealed SHIELDS further discussing the price of the Jeeps with MCCLARN as follows:

> MCCLARN: you'll do 12 even fa all 3 Jeeps
> SHIELDS: Y'all just have to cover shipping
> MCCLARN: how much would that b to get shipped to Madison?
> SHIELDS: 500 each I think
> MCCLARN: He want the Jeep's at the 12.5 like yu said..an get me shipped to. It's good
>
> SHIELDS then texted BULLARD:
> SHIELDS: All three jeeps gone for 12,500 each. Gone hit Laura for shipping
> BULLARD: Ok

61. A dispatch sheet from Action Auto Broker showed that on November 27, 2020, an order was placed for the transport of three Jeeps from WILLIE BULLARD, address 3172 Rosewell Road, Atlanta, Georgia, to "DEVON," address 89 E Towne Way, Madison, Wisconsin. The bill of lading obtained from GIG Logistics, the transport company, showed the three jeeps were picked up on November 27, 2020, and delivered December 1, 2020. Pictures taken by the driver show three jeeps, a blue, black, and white Jeep Grand Cherokee SRT. The white and blue Jeep had "Huntley Ford" license plate holders.

62. On or around November 25, 2020, messages from devon5578@iCloud.com revealed MCCLARN continued the conversation with SHIELDS asking what day the Jeeps would

be shipped and telling SHIELDS, "Temps fa all 3." SHIELDS asked MCCLARN to send the deposit MCCLARN received from the buyer to him.

63. Based on my training, experience, and knowledge of the case, I believe in the above conversation MCCLARN was telling SHIELDS that he would need temporary license plates for the three Jeeps. SHIELDS requested that MCCLARN send the $5,000 deposit to him that the purchaser paid MCCLARN.

64. Cash App records show that on or around November 26, 2020, MCCLARN (Cash App name Slic) sent two payments of $2,500 each to "BMoney." About one minute later, "B Money" sent $4,900 to DIAUNTE SHIELDS.

65. On or around December 1, 2020, messages from devon5578@iCloud.com revealed SHIELDS discussed the logistics of the Jeep deliveries with BULLARD and MCCLARN. Discussions between SHIELDS and BULLARD indicated that they were going to meet up, as BULLARD says, "….soon as you get here," and SHIELDS replied, "Gone talk when I get with you." At approximately 4:00 pm SHIELDS texted MCCLARN, "when y'all get here please make this b quick we been waiting all day." MCCLARN indicated that he was at the airport waiting to pick up the purchaser and that there were some flight delays. MCCLARN tells SHIELDS, "Soon as I get ther ima cum get the keys frm u am start em up fa em so they can look in em then they gon cash out an we gone."

66. Based on my training, experience, and knowledge of the case, I believe the above conversation indicated that SHIELDS was with BULLARD in Wisconsin and they were waiting on MCCLARN to pick the customers up at the airport and bring them to the delivery location of the Jeeps, which was in the area of East Towne Mall in Madison, Wisconsin.

67. On or around December 1, 2020, messages from devon5578@iCloud.com revealed

22

SHIELDS discussed the payment for the Jeeps with BULLARD and MCCLARN. At approximately 7:12 pm, MCCLARN indicated that SHIELDS should have received "34," which entailed "32.5" and the "1500" extra that MCCLARN paid SHIELDS. SHIELDS said, "This is off 4k…" SHIELDS messaged BULLARD, "Run your math real quick and see who gone owe who."

68. Based on my training, experience, and knowledge of the case, I believe that MCCLARN told SHIELDS that SHIELDS should have $34,000, but SHIELDS said he was $4,000 short. SHIELDS also asked BULLARD to "run your math" which I believe is referring to BULLARD figuring out how much money SHIELDS and BULLARD would each get depending upon who paid for costs such as transportation of the Jeeps.

69. On or around December 2, 2020, messages from devon5578@iCloud.com revealed SHIELDS continuing to discuss the Jeep payment with MCCLARN. MCCLARN also informed SHIELDS that the purchaser of the Jeeps got pulled over as outlined below:

> SHIELDS: Did you talk to dude about that other bread
> MCCLARN: I talked to em early this morning he said he wasn't short but he was gon send a band fa u but den he just got pulled ova. I ain't talked to em again yet. I'm waitin ona call to see what up. I can send the Rack I got na. Yu want met to send to day same cash app
> ………………………………
> SHIELDS: Let's say you don't hear from them, what we gone do about this bread
> MCCLARN: Bro. I sent u my band. I ain't make shit but 5k afta I gave u the 1500. Im worried bout them an what's finna happen an u on me about sumin nun of us fa sure of what happen. Ain't nobody gain nun at this point if they shit get took but u. He says he had a band fa u doe so I'm waitin to hear sum. I'm middle man I can't say yu lyin or I can't say he lyin bro…so it's out my hands

70. Based on my training, experience, and knowledge of the case, I believe in the above conversation that MCCLARN is referring to the incident where the three Jeeps were pulled over in Wheaton, Illinois. SHIELDS is still trying to recover money for the Jeeps and MCCLARN said

that he sent SHIELDS a "band" and the purchaser would send SHIELDS another "band." Based on my training and experience, I know that a band usually refers to $1,000.00.

<em>DAW Logistics – Partnership between SHIELDS and BULLARD</em>

71. Records received from the Georgia Secretary of State show that DAW Logistics LLC was registered by WILLIE BULLARD, address 2777 Bell Drive, Smryna, Georgia, on December 19, 2019. DIAUNTE SHIELDS and WILLIE BULLARD were listed as organizers. Investigators believe that "DAW" is an acronym for "Diaunte and Willie." The associated business addresses are 3097 Presidential Drive, Suite G, Atlanta, Georgia, and 3172 Roswell Road NW, unit 1114, Atlanta, Georgia. Associated email addresses include **williebullard@gmail.com** and dawlogisticsllc@gmail.com. The listed business purpose was general freight trucking. Georgia revoked the registration on October 28, 2022 for failure to produce an annual registration.

72. A review of messages from devon5578@icloud.com showed on or around December 19, 2019, BULLARD texted SHIELDS, "dawlogisticsllc@gmail.com" and provided the password.

73. Google has confirmed that the Google account dawlogisticsllc@gmail.com, was created on November 29, 2019, and subscribed to WILLE BULLARD. The associated recovery email was **williebullard@gmail.com** and the recovery phone number was 404-769-2025.

74. Investigators believe SHIELDS and BULLARD used DAW Logistics as a means to attempt to make their vehicle-related misconduct appear legitimate and to launder money. An example of SHIELDS using DAW Logistics to launder money is the purchase of a Land Rover vehicle by his grandmother, TASHERA NEWSOME, described below.

75. A review of messages from devon5578@icloud.com showed on or around October 17, 2020, SHIELDS texted NEWSOME, at phone number 773-505-5064, telling her that she

24

makes $150,000 a year as the DAW Logistics trucking manager. SHIELDS then told NEWSOME that he was going to send her check stubs from DAW Logistics as well.

76.     A review of documents from devon5578@icloud.com showed a pdf titled "Granny pay stubs" showing an earnings statement addressed to TASHERA NEWSOME dated October 9, 2020, from DAW Logistics, 2777 Bell Drive, Smyrna, Georgia. The weekly pay was listed as $2,050.00.

77.     Chase Bank records show that NEWSOME purchased a 2020 Land Rover Range Rover Sport about a week later, on October 26, 2020. That same day, NEWSOME texted SHIELDS a picture along with the following messages: "are you aware of these terms," "are you getting new plates or transferring," "the total with everything is $98,235.24 is that cool," and "I'm done, leaving now." Investigators believe that these texts are in reference to NEWSOME coordinating with SHIELDS the purchase of the Range Rover SUV. Additionally, on the vehicle application that NEWSOME completed for auto financing, NEWSOME listed her employer as "DAW Logistics LLC" and role as "Trucking Manager." NEWSOME also listed her monthly salary as $12,400.00. Auto financing documents from Land Rover Financial Group show that NEWSOME's principal balance on the vehicle on December 6, 2020, was $98,235.24 with a monthly payment of approximately $1,581.62. NEWSOME's Chase Bank records show that between December 7, 2020, and December 6, 2021, she made $19,350.00 worth of payments on the Range Rover SUV.

78.     A review of bocruz0218@icloud.com revealed a photograph with a capture date of July 26, 2022, depicting a BMW Financial Services Business Application for DAW Logistics LLC with a listed address of 3097 Presidential Drive, Atlanta, GA, an email of diaunte@dawlogistic.com, a duration of four years, and owners listed as TASHERA NEWSOME,

25

DIAUNTE SHIELDS, and WILLIE BULLARD. The personal guarantor/co-applicant was TASHERA NEWSOME with listed address 1818 W. Peterson, Chicago, IL. NEWSOME's listed employment was a supervisor at The Douglas Center in Skokie, IL, making $76,000 a year.

79. Additional analysis of NEWSOME's Chase Bank records reveals consistent payroll deposits from Black Knight Payroll, Caremark Payroll, North Shore University, and the Douglas Center. These payroll deposits occurred between June 21, 2019, and January 13, 2022. At no point were there any deposits from DAW Logistics. Between July 3, 2019, and October 24, 2022, there had been $37,230 in cash deposits into NEWSOME's bank account. Most of these deposits had occurred at ATMs in Chicago. NEWSOME also made $121,747.93 in payments to her credit cards between July 2, 2019, and January 9, 2023. NEWSOME made the credit card payments in the following ways: $15,085.00 were cash payments made at an ATM, $22,145.55 were cash payments made at a branch, $48,259.39 were unspecified branch payments, $4,490.77 were made electronically, and $18,740.87 were made via a mobile device. Investigators believe the cash NEWSOME deposited and used to pay her credit cards was derived from the sale of stolen vehicles.

80. Continued investigation into DAW Logistics revealed that on May 12, 2020, BULLARD received a $134,258 Paycheck Protection Program (PPP) loan for DAW Logistics. On the loan application, BULLARD stated that DAW Logistics was established on January 1, 2019, and was located at 3097 Presidential Drive, Atlanta, Georgia. The application stated that 15 employees work for DAW Logistics and the company had an annual payroll of $644,438.00. On February 1, 2021, BULLARD received a second $121,510 PPP loan for DAW Logistics. An analysis of BULLARD's Ameris Bank account showed the first PPP check being deposited into the account on May 18, 2020, and the second one on February 5, 2021. However, the rest of

26

BULLARD's Ameris bank account, along with all other identified DAW Logistics bank accounts, did not show any payroll being paid to employees or deposits that would amount to the annual payroll listed on the PPP applications.

81.    An analysis of a Bank of America bank account for BULLARD's DAW Logistics account, for which he is the sole signor, showed that between January 11, 2021, and November 3, 2021, $202,772.00 in cash deposits had occurred in the account. Most of the deposits appear to be structured to avoid bank reporting requirements.

82.    A review of messages from devon5578@icloud.com showed on or around September 10, 2021, SHIELDS asked BULLARD, "How we looking," to which BULLARD responded, "I put 9k in banner said don't do no 10k deposit." Based on my training and experience, I believe that BULLARD discussed making a $9,000 deposit in this message to avoid reporting thresholds.

83.    Bank records show that at 1:54 P.M. on September 10, 2021, a $9,000 cash deposit occurred at a Fifth Third Bank branch located in Atlanta, Georgia. This currency was deposited into Fifth Third Bank Business Elite Checking account number 7937913536, which is in the name of CASHA GRIFFIN. GRIFFIN is listed as the sole signor on the signature card of this bank account. Approximately thirty-five minutes later, a Fifth Third Bank cashier's check for $11,000 was purchased at a Fifth Third Bank branch located in Miramar, Florida. The money was withdrawn from the same bank account where the cash deposit had previously taken place. The purchaser of the check was listed as being GRIFFIN and the check was written out to Global Group Development and Construction LLC. This cashier's check was then deposited into JPMorgan Chase Bank account Number 82525715.

27

84.     Prior to operating DAW Logistics LLC, BULLARD organized a number of other business entities in Georgia which investigators believe he used as shell companies to conceal illegal activities. As with DAW Logistics, BULLARD created associated email addresses for the businesses.

85.     Records received form the Georgia Secretary of State show that Simple Solutions and Associates LCC was organized on January 12, 2012, by managers WILLIE BULLARD and Ashley Moore with an associated email address of **williebullard@gmail.com**.  The LLC was dissolved in February 2016, but was reinstated in February 2018, with WILLIE BULLARD as the registered agent.

86.     Apple has confirmed that the iCloud account **1simplesolutionllc@gmail.com**, was created on October 27, 2011, using the name WILLE BULLARD JR, address of 5311 Vinings Springs Pointe, Mableton, GA.  Associated phone numbers included 404-376-1400 and 678-900-9887.

87.     Google confirmed that **1simplesolutionllc@gmail.com** was created on July 18, 2009, with a recovery email of sendfabmusic@gmail.com and a recovery phone number of 404-380-5813.

88.     In March 2018, Simple Solutions and Associates LLC changed its name to The Toy Store of Atlanta LLC with WILLIE BULLARD as the organizer.  The listed business address was 3097 Presidential Drive, Suite F, Atlanta, Georgia.

89.     In March 2019 the registered agent was transferred from BULLARD to Chris Spivey with the listed business address still 3097 Presidential Drive, Suite F, Atlanta, Georgia.  In

28

March 2019, The Toy Sore of Atlanta LLC changed its name to Premier 1 Auto Sales LLC with a primary business email address **tsoa@mail.com**. Premier 1 Auto Sales LLC was dissolved on October 22, 2020.

90. Records received from the Georgia Secretary of State showed that The Toy Store of ATL LLC (different from The Toy Store of Atlanta) was registered to and organized by WILLIE BULLARD JR, address 2855 Long Way, Decatur, Georgia, on June 19, 2019. The associated business address was 3097 Presidential Drive, Suite F, Atlanta, Georgia, and the primary email address was **williebullard@gmail.com**. The stated purpose was retail trade – used car dealers. Georgia revoked the business's registration on October 22, 2020 for failure to pay an annual registration fee.

91. IONOS confirmed that the email account **tsoa@mail.com** was activated on February 7, 2018, with "Carlos Core" as the subscriber. Investigators believe that tsoa stands for Toy Store of Atlanta/ATL.

92. Apple confirmed that the iCloud account **tsoa@mail.com**, was created on May 9, 2019, using the name WILLE BULLARD, address of 5311 Vinings Springs Pointe, Mableton, GA. Associated phone numbers included 404-769-2025 and 404-499-3183.

93. The Toy Store of Atlanta had been located at the same address as DAW Logistics in Atlanta, Georgia. An analysis of a Bank of America bank account for The Toy Store of Atlanta, for which BULLARD was the sole signor and utilized email **tsoa@mail.com**, showed $213,444.00 in cash deposits occurring between January 2, 2019, and May 28, 2019. Most of the deposits appeared to be structured to avoid bank reporting requirements.

94. An analysis of a Trust Bank account x4217 for The Toy Store of ATL LLC, for which BULLARD was the sole signor and utilized email **williebullard@gmail.com**, showed

multiple cashier's checks deposited with VINs referenced on the checks. Investigators have determined that the majority of the referenced VINs are fraudulent.

95.     For example, on August 9, 2019, an Altura Credit Union cashier's check in the amount of $30,000 from Richard Madokoro was deposited with a memo stating: VIN 3GCPCSC9HG363408.  On September 10, 2019, a Digital Federal Credit Union cashier's check (#1569013) from Krishaun Jackson in the amount of $40,000 to Toy Store of Atlanta with a memo referencing VIN 1GCVKREC1JZ154124 was deposited. An apparent refund was then issued as The Toy Store of ATL LLC's check 108 written on September 27, 2019, was made payable to Krishaun Jackson for $12,255 with a memo of "refund." It was then endorsed and deposited by "Tagua Mumins." Then on October 28, 2019, a State Farm Bank cashier's check (#2527661) in the amount of $33,638 from Cynara Pitt was deposited for a Chevrolet Silverado with VIN 1GCVKREC1JZ154124 (same VIN as was referenced on the check from September 10, 2019.) In April 2022, authorities recovered a Chevrolet Silverado with VIN 1GCVKREC1JZ154124 during the execution of search warrants targeting SHIELDS in Wisconsin.  At the time of recovery, the public VIN on the Silverado was 3GCPCSC9HG363408 (same VIN as was referenced on the check from August 9, 2019).  VIN 3GCPCSC9HG363408 was traced back to a 2017 Silverado that was bought at a salvage auction.  The vehicle was severely wrecked, but had a good title, so it appears VIN 3GCPCSC9HG363408 was switched with VIN 1GCVKREC1JZ154124. At the time of recovery, the Silverado was registered to Bimma Electric LLC which was associated with DIAUNTE J. SHIELDS.

96.     As another example, on December 13, 2019, a State Farm Bank Cashier's Check (#2508477) in the amount of $28,924 from Malik Sajid was deposited for a used 2018 Chevrolet

30

Tahoe, VIN 1GNSCBKC6JR757928. In March 2020, General Motors confirmed that VIN 1GNSCBKC6JR757928 was not valid.

97.    Furthermore, an analysis of BULLARD's personal bank accounts shows that between August 5, 2019, and January 24, 2022, there were $455,118.00 in cash deposits. BULLARD also received $118,255.98 between July 1, 2019, and February 17, 2022, in Peer-to-Peer transactions through his Cash App account. In total, BULLARD's business and personal accounts had deposits totaling $1,841,024.00 between January 2, 2019, and January 24, 2022, and $914,283.51 of those deposits were cash.

*BULLARD's Hidden Gem Businesses*

98.    Records received from the Georgia Secretary of State show that Hidden Gem Realty LLC was registered to and organized by WILLIE BULLARD JR, address 5311 Vinings Springs Pointe, Mableton, Georgia, on July 1, 2021.  The associated business address was 3172 Roswell Pointe, Atlanta, Georgia, and the primary email address was **williebullard@gmail.com**. The stated purpose was real estate and leasing of residential buildings and dwellings.  The business was dissolved on October 28, 2022, due to failure to pay the annual registration fee.

99.    Google confirmed that **hiddengemrealtyatl@gmail.com** was created on July 1, 2021, with a recovery email of **williebullard@gmail.com** and with a Google Pay account that had linked credit cards in the name WILLIE BULLARD.

100.    Apple confirmed that the iCloud account **hiddengemrealtyatl@gmail.com** was created on June 4, 2022, using the name "Will Ballard."  The associated phone number was 404-499-3183.

101.    Records received from the Georgia Secretary of State show that Hidden Gems Community Corp was registered to WILLIE B BULLARD JR, address 5311 Vinings Springs

31

Pointe, Mableton, Georgia, on July 6, 2021. The associated business address was 3097 Presidential Drive, Suite G, Atlanta, Georgia, and the primary email address was hgcommunitycorp@gmail.com. The business was dissolved on October 28, 2022, due to failure to pay the annual registration fee.

102. Google confirmed that hgcommunitycorp@gmail.com was created on July 6, 2021, with a recovery phone number 404-769-2025.

103. Records received from the Georgia Secretary of State show that Hidden Gem Restoration LLC was registered to Kourtney Ashley (who investigators believe to be BULLARD's girlfriend), business address 5311 Vinings Springs Pointe, Mableton, Georgia, on September 27, 2021. WILLIE BULLARD's name was used as the long-on to form the business along with email **williebullard@gmail.com.** The stated business purpose was residential remodeling with a business email hiddengemrestoration@gmail.com.

104. Records received from the Georgia Secretary of State show that Hidden Gem Trucking LLC was registered to Kourtney Ashley (BULLARD's girlfriend), business address 5311 Vinings Springs Pointe, Mableton, Georgia, on March 20, 2022. WILLIE BULLARD's name was used as the long-on to form the business along with email **williebullard@gmail.com.** The stated business purpose was general freight trucking with a business email kourtney.ashley@gmail.com.

<u>*BULLARD's Smyrna, Georgia Case*</u>

105. In May 2022, BULLARD was charged in Cobb County, Georgia, with one count of theft by receiving stolen property for conduct that occurred on or about April 20, 2020.

106. According to a Smyrna, Georgia, police report for case number 20-040274, on April 20, 2020, officers responded to the 2700 block of Bell Drive to locate a stolen 2020 GMC Terrain

32

that was pinging in the area. After leaving the area because they could not locate the vehicle, a witness called police and stated he observed the vehicle in the garage of 2777 Bell Drive, Smyrna, Georgia. Upon returning to the area, another witness advised that her friend managed 2777 Bell Drive and the property was supposed to be vacant. The front door was unlocked and officers proceeded to clear the residence and garage. The garage contained a 2020 GMC Terrain that was confirmed to be stolen. A search warrant executed on the residence revealed numerous items related to theft of vehicles and the altering of their identifiers including printers, materials to make Georgia temporary tags, a heat gun, tools, temporary and permanent license plates, shredded vehicle titles, and a VIN sticker.

107. Based on a key located in the residence, officers checked the area for a Dodge vehicle and found a Dodge Challenger bearing Alabama dealer tag D208922. Neither the Alabama tag nor the VIN returned to a vehicle. Officers also located a Can Am Ryker which returned to WILLIE BULLARD, 2777 Bell Drive, Smyrna, Georgia.

108. The property manager advised that on December 1, 2018, WILLIE BULLARD signed a lease for 2777 Bell Drive, Smyrna, Georgia, and had renewed the lease on December 1, 2019. When contacted by law enforcement, BULLARD stated that as of December 2019 he subleased the property to Austin Siampwizi.

109. In March 2023, BULLARD was sentenced to three years of probation in Cobb County, Georgia, for theft by receiving stolen property.

**AUBREY MITCHELL and RAYMOND COOPER**

110. RAYMOND COOPER and AUBREY MITCHELL are suspected associates of SHIELDS and BULLARD. A review of champrob221@icloud.com, an account attributed SHIELDS, revealed contacts with the email address **rayrilla232023@icloud.com**. Apple

33

confirmed that email address has a subscriber name of "Raymond Baker," address of 1105 Town Blvd, Apt 2316, Brookhaven, Georgia, and associated phone numbers 786-606-4178 and 773-708-3701. The account was created on September 22, 2017. It is noted that the last four digits of RAYMOND COOPER's social security number are "2320." Additionally, in the champrob221@icloud.com account, the phone number 786-606-4178 is associated with contact "Ray." Phone number 773-708-3701 is not associated with a contact, however, champrob221@icloud.com has text conversations with this phone number in August through October 2020 regarding vehicle sales.

111.     A review of iCloud accounts associated with SHIELDS revealed numerous contacts and conversations with an individual who goes by "Rila" or "Rilla." The champrob221@icloud.com account has a contact "Rila" associated with phone number 786-742-6158, and in text exchanges spanning June 2020 through August 2020 with phone number 786-810-2509, the individual identifies himself as "Rilla." Account bocruz0218@icloud.com, created June 14, 2022, has contacts for "Rilla" associated with phone number 708-793-2706, and "Rilla 2" associated with phone number 708-654-2871. Records for SHIELDS's phone numbers 414-217-8150, 414-514-4558, 773-441-8282, and 773-318-4049 show that he has been in contact with phone number 708-654-2871 ("Rilla 2") from October 2022 through February 2023.

112.     On or around November 18, 2019, **rayrilla232023@icloud.com** sent an email to champrob221@icloud.com containing a pdf attachment named "NEVADA PLATE." The temporary Nevada placard BZ-898-074 had a listed VIN 1C4RJFDJ6HC351810 for a 2017 Jeep Grand Cherokee with an owner name Solomon Industries in Baltimore, Maryland. Records indicate that a fraudulent Georgia title was presented at registration for this vehicle, and Stellantis confirmed that VIN 1C4RJFDJ6HC351810 is not valid.

34

113.    A review of bocruz0218@icloud.com and devon5578@icloud.com, accounts attributed to SHIELDS, revealed contacts with the email address eagled2320@gmail.com. Subscriber information from Google returned a subscriber name of "Trey Droke" and an account creation date of January 26, 2017. A linked credit card was in the name AUBREY MITCHELL. This account, like **rayrilla232023@icloud.com,** appears to include the last four digits of RAYMOND COOPER's social security number, "2320."

114.    On or around August 23, 2022, eagled2320@gmail.com forwarded an email from temptagking@yahoo.com to bocruz0218@icloud.com containing a Texas buyer tag number 883620F for a 2020 Dodge with VIN 2C3CDZFJ8LH165465. The buyer's tag receipt showed an applicant name of GREGORY WILDER JR, address 6095 N. Green Bay Avenue, Milwaukee, Wisconsin. Records from the Wisconsin Department of Motor Vehicles show that a fraudulent Georgia Title for a 2020 Dodge Challenger in the name of GREGORY WILDER JR and VIN 2C3CDZFJ8LH165465 was presented at registration.

115.    On or around August 27, 2022, eagled2320@gmail.com forwarded an email from temptagking@yahoo.com to bocruz0218@icloud.com containing a Texas buyer tag number 859171F for a 2021 Chrysler with VIN 2C3CCABG6MH524764. The buyer's tag receipt showed an applicant name of Lakeshia S. Dalton with an Atlanta, Georgia, address. On May 9, 2023, investigators recovered a vehicle with fraudulent VIN 2C3CCABG6MH524764 in Milwaukee, Wisconsin, as part of search warrants targeting ESTEBAN CARDENAS. Once the genuine VIN 2C3CCABG0MH585642 was found on the vehicle, it was determined that the vehicle was stolen from Chicago, Illinois.

35

*Example of MITCHELL's Association to Vehicle Resale:*
*Chamblee, Georgia Incident*

116.    According to a Chamblee, Georgia, Police Department report for case 20-05365, on or about October 9, 2020, a victim called the Chamblee Police Department and informed them that he was tracking his gray 2020 Jeep Grand Cherokee that was taken from his apartment complex in Atlanta, Georgia, overnight.  The victim also indicated that his neighbor's blue 2019 Dodge Challenger was missing. At the time of the call, the Jeep was pinging at 3134 Chestnut, Drive, Doralville, Georgia, a self-storage facility.  Investigators had been to the same location the previous week in an effort to locate a stolen black Jeep.

117.    WILLIE BULLARD had provided 3134 Chestnut, Drive, Atlanta, Georgia, as the pick-up or drop off location for at least eight vehicles that were scheduled for transport through Action Auto Broker and Brave Brokerage between July 2020 and May 2021.  The vehicles were scheduled to be shipped to or received from locations including California, Illinois, Minnesota, Virginia and Delaware.  Included in the shipments was a 2020 Ford F250 transit van scheduled to be shipped to "Devon," believed to be SHIELDS, in Illinois.

118.    Upon arrival at the storage complex, investigators noticed that the door to unit H12 was slightly ajar.  Upon peering through the opening, investigators could see a gray Jeep Grand Cherokee. During this timeframe, investigators noticed a suspicious black Jeep Grand Cherokee at the entrance of the storage complex. Attempted contact with the black Jeep Grand Cherokee resulted in an unsuccessful vehicle pursuit.

119.    A search warrant for unit H12 led to the recovery of the gray Jeep Grand Cherokee and the blue Dodge Challenger. Numerous tools and supplies consistent with vehicle theft and the alteration of VINs were also located in the storage facility.

36

120.    A review of rental information for unit H12 showed that AUBREY MITCHELL rented the storage unit in June 2020 and presented an Illinois driver's license in his name.

*Example of COOPER and MITCHELL's Association to Vehicle Resale:*
*Fraudulent Dodge Ram VIN*

121.    Per devon5578@icloud.com text messages, on or about March 19, 2022, SHIELDS texted his father, DIAUNTE J. SHIELDS (further referred to as "J.SHIELDS"), "send the vin here," to which J.SHIELDS responded, "1C6SRFU97MN999789 21' TRX."

122.    Per devon5578@icloud.com text messages, on or about March 20, 2022, SHIELDS texted 678-301-8817 (a contact listed as "Huncho"), "1C6SRFU97MN999789 21 TRX 1k miles Any name black," to which Huncho responded, "bet."  Based on my training, experience, and knowledge of the case, I believe SHIELDs was providing vehicle information to "Huncho" for purposes of making a fraudulent title.

123.    The contact associated with phone number 678-301-8817 in SHIELDS's bocruz0218@icloud.com account was "Hunch Titles." As of November 2020, the subscriber of the phone number was Hunchi Mullins, address of 1301 Halter Lane, Lithonia, Georgia.  From November 2021 through June 2023, GRIFFIN, NAKIYA WRIGHT, and LASHAWN DAVIS, and SHIELDS sent approximately 23 Cash App transactions totaling more than $23,000 to "Rich Visionz Custom Auto."  A review of social media accounts and Georgia Secretary of State records lead me to believe "Hunchi" Mullins is BRANDON MULLINS. MULLINS is the registered agent/organizer of a Georgia company called Rich Visionz Custom Auto LLC.

124.    Per devon5578@icloud.com text messages, on or about March 20, 2022, SHIELDS texted 404-202-1148 (a contact listed as "Ray") an unknown image to which "Ray" responded "1C6SRFU97MN999789."  The conversation continued with "Ray" texting, "Send email," and

37

SHIELDS responding, devon5578@icloud.com. Open source records have phone number 404-202-1148 associated with RAYMOND COOPER and AUBREY MITCHELL.

125.     A review of devon5578@icloud.com revealed an email dated March 23, 2022, from eagled2320@gmail.com to devon5578@icloud.com which was a forwarded message that **tsoa@mail.com** sent to eagled2320@gmail.com on March 20, 2022. The email contained a pdf document named "RAYR" which contained a public dashboard VIN plate and corresponding door sticker for VIN 1C6SRFU97MN999789.

126.     Wisconsin Division of Motor Vehicles records show that on March 26, 2022, a 2021 Dodge Ram with VIN 1C6SRFU97MN999789 was registered in Wisconsin to Anthony Cortez Gray, address of 1110 N. 17th Street, #308, Milwaukee, Wisconsin. A fraudulent Georgia Certificate of Title with VIN 1C6SRFU97MN999789 for a black 2021 Dodge Ram with 988 miles, issued March 16, 2022, in the name of Derrick Francis from Atlanta, Georgia, was presented for registration. Stellantis advised that VIN 1C6SRFU97MN999789 is not a valid VIN.

## BACKGROUND CONCERNING APPLE[1]

127.     Apple is a United States company that produces the iPhone, iPad, and iPod Touch, all of which use the iOS operating system, and desktop and laptop computers based on the Mac OS operating system.

---

[1]      The information in this section is based on information published by Apple on its website, including, but not limited to, the following document and webpages: "U.S. Law Enforcement Legal Process Guidelines," available at https://www.apple.com/legal/privacy/law-enforcement-guidelines-us.pdf; "Create and start using an Apple ID," available at https://support.apple.com/en-us/HT203993; "iCloud," available at http://www.apple.com/icloud/; "What does iCloud back up?," available at https://support.apple.com/kb/PH12519; "iOS Security," available at https://www.apple.com/business/docs/iOS_Security_Guide.pdf, and "iCloud: How Can I Use iCloud?," available at https://support.apple.com/kb/PH26502.

38

128.     Apple provides a variety of services that can be accessed from Apple devices or, in some cases, other devices via web browsers or mobile and desktop applications ("apps").   As described in further detail below, the services include email, instant messaging, and file storage:

a.     Apple provides email service to its users through email addresses at the domain names mac.com, me.com, and icloud.com.

b.     iMessage and FaceTime allow users of Apple devices to communicate in real-time.  iMessage enables users of Apple devices to exchange instant messages ("iMessages") containing text, photos, videos, locations, and contacts, while FaceTime enables those users to conduct audio and video calls.

c.     iCloud is a cloud storage and cloud computing service from Apple that allows its users to interact with Apple's servers to utilize iCloud-connected services to create, store, access, share, and synchronize data on Apple devices or via icloud.com on any Internet-connected device.  For example, iCloud Mail enables a user to access Apple-provided email accounts on multiple Apple devices and on iCloud.com.  iCloud Photo Library and My Photo Stream can be used to store and manage images and videos taken from Apple devices, and iCloud Photo Sharing allows the user to share those images and videos with other Apple subscribers. iCloud Drive can be used to store presentations, spreadsheets, and other documents.  iCloud Tabs and bookmarks enable iCloud to be used to synchronize bookmarks and webpages opened in the Safari web browsers on all of the user's Apple devices.  iCloud Backup allows users to create a backup of their device data.  iWork Apps, a suite of productivity apps (Pages, Numbers, Keynote, and Notes), enables iCloud to be used to create, store, and share documents, spreadsheets, and presentations.  iCloud Keychain enables a user to keep website username and passwords, credit card information, and Wi-Fi network information synchronized across multiple Apple devices.

39

d.     Game Center, Apple's social gaming network, allows users of Apple devices to play and share games with each other.

e.     Find My iPhone allows owners of Apple devices to remotely identify and track the location of, display a message on, and wipe the contents of those devices.  Find My Friends allows owners of Apple devices to share locations.

f.     Location Services allows apps and websites to use information from cellular, Wi-Fi, Global Positioning System ("GPS") networks, and Bluetooth, to determine a user's approximate location.

g.     App Store and iTunes Store are used to purchase and download digital content.  iOS apps can be purchased and downloaded through App Store on iOS devices, or through iTunes Store on desktop and laptop computers running either Microsoft Windows or Mac OS.  Additional digital content, including music, movies, and television shows, can be purchased through iTunes Store on iOS devices and on desktop and laptop computers running either Microsoft Windows or Mac OS.

129.    Apple services are accessed through the use of an "Apple ID," an account created during the setup of an Apple device or through the iTunes or iCloud services.  The account identifier for an Apple ID is an email address, provided by the user.  Users can submit an Apple-provided email address (often ending in @icloud.com, @me.com, or @mac.com) or an email address associated with a third-party email provider (such as Gmail, Yahoo, or Hotmail).  The Apple ID can be used to access most Apple services (including iCloud, iMessage, and FaceTime) only after the user accesses and responds to a "verification email" sent by Apple to that "primary" email address.  Additional email addresses ("alternate," "rescue," and "notification" email

40

addresses) can also be associated with an Apple ID by the user. A single Apple ID can be linked to multiple Apple services and devices, serving as a central authentication and syncing mechanism.

130. Apple captures information associated with the creation and use of an Apple ID. During the creation of an Apple ID, the user must provide basic personal information including the user's full name, physical address, and telephone numbers. The user may also provide means of payment for products offered by Apple. The subscriber information and password associated with an Apple ID can be changed by the user through the "My Apple ID" and "iForgot" pages on Apple's website. In addition, Apple captures the date on which the account was created, the length of service, records of log-in times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to and utilize the account, the Internet Protocol address ("IP address") used to register and access the account, and other log files that reflect usage of the account.

131. Additional information is captured by Apple in connection with the use of an Apple ID to access certain services. For example, Apple maintains connection logs with IP addresses that reflect a user's sign-on activity for Apple services such as iTunes Store and App Store, iCloud, Game Center, and the My Apple ID and iForgot pages on Apple's website. Apple also maintains records reflecting a user's app purchases from App Store and iTunes Store, "call invitation logs" for FaceTime calls, "query logs" for iMessage, and "mail logs" for activity over an Apple-provided email account. Records relating to the use of the Find My iPhone service, including connection logs and requests to remotely lock or erase a device, are also maintained by Apple.

132. Apple also maintains information about the devices associated with an Apple ID. When a user activates or upgrades an iOS device, Apple captures and retains the user's IP address and identifiers such as the Integrated Circuit Card ID number ("ICCID"), which is the serial

41

number of the device's SIM card.  Similarly, the telephone number of a user's iPhone is linked to an Apple ID when the user signs into FaceTime or iMessage.  Apple also may maintain records of other device identifiers, including the Media Access Control address ("MAC address"), the unique device identifier ("UDID"), and the serial number.  In addition, information about a user's computer is captured when iTunes is used on that computer to play content associated with an Apple ID, and information about a user's web browser may be captured when used to access services through icloud.com and apple.com.  Apple also retains records related to communications between users and Apple customer service, including communications regarding a particular Apple device or service, and the repair history for a device.

133.    Apple provides users with five gigabytes of free electronic space on iCloud, and users can purchase additional storage space.  That storage space, located on servers controlled by Apple, may contain data associated with the use of iCloud-connected services, including: email (iCloud Mail); images and videos (iCloud Photo Library, My Photo Stream, and iCloud Photo Sharing); documents, spreadsheets, presentations, and other files (iWork and iCloud Drive); and web browser settings and Wi-Fi network information (iCloud Tabs and iCloud Keychain).  iCloud can also be used to store iOS device backups, which can contain a user's photos and videos, iMessages, Short Message Service ("SMS") and Multimedia Messaging Service ("MMS") messages, voicemail messages, call history, contacts, calendar events, reminders, notes, app data and settings, Apple Watch backups, and other data.  Records and data associated with third-party apps may also be stored on iCloud; for example, the iOS app for WhatsApp, an instant messaging service, can be configured to regularly back up a user's instant messages on iCloud Drive.  Some of this data is stored on Apple's servers in an encrypted form but can nonetheless be decrypted by Apple.

134.     In my training and experience, evidence of who was using an Apple ID and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above.  This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.

135.     For example, the stored communications and files connected to an Apple ID may provide direct evidence of the offenses under investigation.  Based on my training and experience, instant messages, emails, voicemails, photos, videos, and documents are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation. Further, I know from the investigation to date that SHIELDS and his associates have used iCloud accounts in the past to facilitate criminal conduct and keep and maintain records of such criminal conduct, including photographs, videos, screenshots of web inquiries, and screenshots of contact information.

136.     In addition, the user's account activity, logs, stored electronic communications, and other data retained by Apple can indicate who has used or controlled the account.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  For example, subscriber information, email and messaging logs, documents, and photos and videos (and the data associated with the foregoing, such as geo-location, date and time) may be evidence of who used or controlled the account at a relevant time.  As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the account.

Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation.

137.    Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation.  For example, information on the account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

138.    Other information connected to an Apple ID may lead to the discovery of additional evidence.  For example, the identification of apps downloaded from App Store and iTunes Store may reveal services used in furtherance of the crimes under investigation or services used to communicate with co-conspirators.  In addition, emails, instant messages, Internet activity, documents, and contact and calendar information can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation.

139.    Therefore, Apple's servers are likely to contain stored electronic communications and information concerning subscribers and their use of Apple's services.  In my training and experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users.

## CONCLUSION

140.    As the investigation into SHIELDS and his criminal enterprise evolves, the scope of the criminal activity under investigation has broadened in terms of both personnel involved and criminal conduct.  Evidence has shown that SHIELDS relies on a network of associates involved in criminal activities which have included, among other crimes, conspiracy, theft and processing of stolen vehicles, money laundering, and other financial crimes. SHIELDS has been linked to

44

numerous iCloud accounts that have provided, among other things, messages, emails, notes, photographs, and documents which have shown the longevity and scope of his conduct. By obtaining the iCloud accounts of his associates, investigators aim to further develop the criminal enterprise and understand the roles each individual plays. In addition, these iCloud accounts could aid in identifying other individuals involved in the criminal enterprise.

141.    Based on the forgoing, I request that the Court issue the proposed search warrant.

142.    Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving the warrant on Apple. Because the warrant will be served on Apple, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

## ATTACHMENT A

### Property to Be Searched

### Matter No. 2022R00208

This warrant applies to information associated with the following accounts that is stored at premises owned, maintained, controlled, or operated by Apple Inc., a company headquartered at One Apple Park Way, Cupertino, California:

- **tsoa@mail.com**                      **05/8/19 through the present**
- **williebullard@gmail.com**        **06/17/22 through the present**
- **1simplesolutionllc@gmail.com**    **07/1/19 through the present**
- **hiddengemrealtyatl@gmail.com**    **06/4/22 through the present**
- **rayrilla232023@icloud.com**       **11/1/2019 through the present**

Account williebullard@gmail.com was previously preserved via a request assigned Apple reference numbers 202300246332 and 202300323711. Accounts hiddengemrealtyatl@gmail.com and tsoa@mail.com were previously preserved via a request assigned Apple reference numbers 202300278808 and 202300356656.

**ATTACHMENT B**

**Particular Things to be Seized**

**I.      Information to be disclosed by Apple Inc. ("Apple")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Apple, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to Apple, or has been preserved pursuant to requests made under 18 U.S.C. § 2703(f) with Apple reference numbers 202300246332, 202300323711, 202300278808, and 202300356656, Apple is required to disclose the following information to the government for each account or identifier listed in Attachment A:

1.      All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers, email addresses (including primary, alternate, rescue, and notification email addresses, and verification information for each email address), the date on which the account was created, the length of service, the IP address used to register the account, account status, associated devices, methods of connecting, and means and source of payment (including any credit or bank account numbers);

2.      All records or other information regarding the devices associated with, or used in connection with, the account (including all current and past trusted or authorized iOS devices and computers, and any devices used to access Apple services), including serial numbers, Unique Device Identifiers ("UDID"), Advertising Identifiers ("IDFA"), Global Unique Identifiers ("GUID"), Media Access Control ("MAC") addresses, Integrated Circuit Card ID numbers ("ICCID"), Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifiers ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber

2

Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Numbers ("MSISDN"), International Mobile Subscriber Identities ("IMSI"), and International Mobile Station Equipment Identities ("IMEI");

3.      The contents of all emails associated with the account including stored or preserved copies of emails sent to and from the account (including all draft emails and deleted emails), the source and destination addresses associated with each email, the date and time at which each email was sent, the size and length of each email, and the true and accurate header information including the actual IP addresses of the sender and the recipient of the emails, and all attachments;

4.      The contents of all instant messages associated with the account, including stored or preserved copies of instant messages (including iMessages, SMS messages, and MMS messages) sent to and from the account (including all draft and deleted messages), the source and destination account or phone number associated with each instant message, the date and time at which each instant message was sent, the size and length of each instant message, the actual IP addresses of the sender and the recipient of each instant message, and the media, if any, attached to each instant message;

5.      The contents of all files and other records stored on iCloud, including all iOS device backups, all Apple and third-party app data, all files and other records related to iCloud Mail, iCloud Photo Sharing, My Photo Stream, iCloud Photo Library, iCloud Drive, iWork (including Pages, Numbers, Keynote, and Notes), iCloud Tabs and bookmarks, and iCloud Keychain, and all address books, contact and buddy lists, notes, reminders, calendar entries, images, videos, voicemails, device settings, and bookmarks;

6.      All activity, connection, and transactional logs for the account (with associated IP addresses including source port numbers), including FaceTime call invitation logs, messaging and

3

query logs (including iMessage, SMS, and MMS messages), mail logs, iCloud logs, iTunes Store and App Store logs (including purchases, downloads, and updates of Apple and third-party apps), My Apple ID and iForgot logs, sign-on logs for all Apple services, Game Center logs, Find My iPhone and Find My Friends logs, logs associated with web-based access of Apple services (including all associated identifiers), and logs associated with iOS device purchase, activation, and upgrades;

7.      All records and information regarding locations where the account or devices associated with the account were accessed, including all data stored in connection with Location Services, Find My iPhone, Find My Friends, and Apple Maps;

8.      All records pertaining to the types of service used;

9.      All records pertaining to communications between Apple and any person regarding the account, including contacts with support services and records of actions taken; and

10.     All files, keys, or other information necessary to decrypt any data produced in an encrypted form, when available to Apple (including, but not limited to, the keybag.txt and fileinfolist.txt files).


**Apple is hereby ordered to disclose the above information to the government within FOURTEEN (14) DAYS of issuance of this warrant.**

4

## II.  Information to be seized by the government

For **tsoa@mail.com**, all information described above in Section I that constitutes fruits, contraband, evidence, and instrumentalities of violations of 18 U.S.C. § 371 (conspiracy), 18 U.S.C. § 511 (altering or removing vehicle identification numbers), § 1343 (wire fraud), 18 U.S.C. §§ 1956 and 1957 (money laundering and unlawful monetary transactions), 18 U.S.C. §§ 2312 and 2313 (transportation of stolen vehicles and sale or receipt of stolen vehicles), from **5/8/2019 through the present**, including but not limited to:

(a) Location information associated with the co-conspirators, call and message records associated with the co-conspirators, photographs and videos of stolen vehicles, communications about stolen vehicles, records related to vehicle repair shops, records related to VINs and titles, records related to the transportation of vehicles, records related to money transfers, records related to the advertisement of vehicles, and records related to other preparatory steps taken in furtherance of the scheme**;**

(b) Photographs, videos, communications, and other records related to bank accounts and money transfer accounts owned or utilized by subjects of this investigation in relation to the crimes under investigation;

(c) Evidence related to any businesses owned or utilized by subjects of this investigation in relation to the crimes under investigation;

(d) Evidence related to loan applications and other financial instruments;

(e) Evidence indicating how and when the account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crimes under investigation and to the account owner;

5

(f) Evidence indicating the account owner's state of mind as it relates to the crimes under investigation;

(g) Travel records and location information associated with the subjects of this investigation;

(h) The identity of the person(s) who created or used the account;

(i) The identity of the person(s) who communicated with the account user about matters relating to the crimes under investigation.

For **williebullard@gmail.com**, all information described above in Section I that constitutes fruits, contraband, evidence, and instrumentalities of violations of 18 U.S.C. § 371 (conspiracy), 18 U.S.C. § 511 (altering or removing vehicle identification numbers), § 1343 (wire fraud), 18 U.S.C. §§ 1956 and 1957 (money laundering and unlawful monetary transactions), 18 U.S.C. §§ 2312 and 2313 (transportation of stolen vehicles and sale or receipt of stolen vehicles), from **6/17/2022 through the present**, including but not limited to:

(a) Location information associated with the co-conspirators, call and message records associated with the co-conspirators, photographs and videos of stolen vehicles, communications about stolen vehicles, records related to vehicle repair shops, records related to VINs and titles, records related to the transportation of vehicles, records related to money transfers, records related to the advertisement of vehicles, and records related to other preparatory steps taken in furtherance of the scheme**;**

(b) Photographs, videos, communications, and other records related to bank accounts and money transfer accounts owned or utilized by subjects of this investigation in relation to the crimes under investigation;

6

(c) Evidence related to any businesses owned or utilized by subjects of this investigation in relation to the crimes under investigation;

(d) Evidence related to loan applications and other financial instruments;

(e) Evidence indicating how and when the account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crimes under investigation and to the account owner;

(f) Evidence indicating the account owner's state of mind as it relates to the crimes under investigation;

(g) Travel records and location information associated with the subjects of this investigation;

(h) The identity of the person(s) who created or used the account;

(i) The identity of the person(s) who communicated with the account user about matters relating to the crimes under investigation.

For **1simplesolutionllc@gmail.com**, all information described above in Section I that constitutes fruits, contraband, evidence, and instrumentalities of violations of 18 U.S.C. § 371 (conspiracy), 18 U.S.C. § 511 (altering or removing vehicle identification numbers), § 1343 (wire fraud), 18 U.S.C. §§ 1956 and 1957 (money laundering and unlawful monetary transactions), 18 U.S.C. §§ 2312 and 2313 (transportation of stolen vehicles and sale or receipt of stolen vehicles), from **7/1/2019 through the present**, including but not limited to:

(a) Location information associated with the co-conspirators, call and message records associated with the co-conspirators, photographs and videos of stolen vehicles, communications about stolen vehicles, records related to vehicle repair shops, records related to VINs and titles, records related to the transportation of vehicles,

7

records related to money transfers, records related to the advertisement of vehicles, and records related to other preparatory steps taken in furtherance of the scheme**;**

(b) Photographs, videos, communications, and other records related to bank accounts and money transfer accounts owned or utilized by subjects of this investigation in relation to the crimes under investigation;

(c) Evidence related to any businesses owned or utilized by subjects of this investigation in relation to the crimes under investigation;

(d) Evidence related to loan applications and other financial instruments;

(e) Evidence indicating how and when the account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crimes under investigation and to the account owner;

(f) Evidence indicating the account owner's state of mind as it relates to the crimes under investigation;

(g) Travel records and location information associated with the subjects of this investigation;

(h) The identity of the person(s) who created or used the account;

(i) The identity of the person(s) who communicated with the account user about matters relating to the crimes under investigation.

For **hiddengemrealtyatl@gmail.com**, all information described above in Section I that constitutes fruits, contraband, evidence, and instrumentalities of violations of 18 U.S.C. § 371 (conspiracy), 18 U.S.C. § 511 (altering or removing vehicle identification numbers), § 1343 (wire fraud), 18 U.S.C. §§ 1956 and 1957 (money laundering and unlawful monetary transactions), 18 U.S.C. §§ 2312 and 2313 (transportation of stolen vehicles and sale or receipt of stolen vehicles),

8

from **6/4/2022 through the present**, including but not limited to:

    (a) Location information associated with the co-conspirators, call and message records associated with the co-conspirators, photographs and videos of stolen vehicles, communications about stolen vehicles, records related to vehicle repair shops, records related to VINs and titles, records related to the transportation of vehicles, records related to money transfers, records related to the advertisement of vehicles, and records related to other preparatory steps taken in furtherance of the scheme**;**

    (b) Photographs, videos, communications, and other records related to bank accounts and money transfer accounts owned or utilized by subjects of this investigation in relation to the crimes under investigation;

    (c) Evidence related to any businesses owned or utilized by subjects of this investigation in relation to the crimes under investigation;

    (d) Evidence related to loan applications and other financial instruments;

    (e) Evidence indicating how and when the account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crimes under investigation and to the account owner;

    (f) Evidence indicating the account owner's state of mind as it relates to the crimes under investigation;

    (g) Travel records and location information associated with the subjects of this investigation;

    (h) The identity of the person(s) who created or used the account;

    (i) The identity of the person(s) who communicated with the account user about matters relating to the crimes under investigation.

9

For **rayrilla232023@icloud.com**, all information described above in Section I that constitutes fruits, contraband, evidence, and instrumentalities of violations of 18 U.S.C. § 371 (conspiracy), 18 U.S.C. § 511 (altering or removing vehicle identification numbers), 18 U.S.C. §§ 2312 and 2313 (transportation of stolen vehicles and sale or receipt of stolen vehicles), from **11/1/2019 through the present**, including but not limited to:

(a) Location information associated with the co-conspirators, call and message records associated with the co-conspirators, photographs and videos of stolen vehicles, communications about stolen vehicles, records related to vehicle repair shops, records related to VINs and titles, records related to the transportation of vehicles, records related to money transfers, records related to the advertisement of vehicles, and records related to other preparatory steps taken in furtherance of the scheme**;**

(b) Photographs, videos, communications, and other records related to bank accounts and money transfer accounts owned or utilized by subjects of this investigation in relation to the crimes under investigation;

(c) Evidence indicating how and when the account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crimes under investigation and to the account owner;

(d) Evidence indicating the account owner's state of mind as it relates to the crimes under investigation;

(e) Travel records and location information associated with the subjects of this investigation;

(f) The identity of the person(s) who created or used the account;

10

(g) The identity of the person(s) who communicated with the account user about matters relating to the crimes under investigation.

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

11